UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS A. CENSKE,

Plaintiff,

v.

COUNTY OF MARQUETTE et al.,

Defendants.

Case No. 2:25-cv-232

Honorable Hala Y. Jarbou

**OPINION**

This is a civil rights action brought by Plaintiff Thomas A. Censke under 42 U.S.C. § 1983.

This matter is now before the Court on Defendants' motions to dismiss. All seven defendants have moved the Court to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) because his allegations fail to state a claim on which relief may be granted. (ECF Nos. 13, 16.)

Additionally, the Court previously granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 7.) The statute that permits Plaintiff to proceed *in forma pauperis*, 28 U.S.C. § 1915(e), compels the Court to dismiss the case at any time if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2).

This matter is also before the Court on Plaintiff's motion for a temporary restraining order (ECF No. 21), and Plaintiff's motions to supplement that motion (ECF Nos. 25, 27).

For the reasons set forth below, the Court will grant Plaintiff's motions to supplement his motion for temporary restraining order, deny Plaintiff's motion for temporary restraining order, and grant Defendants' motion to dismiss this action because Plaintiff's complaint fails to state a claim on which relief may be granted.

**Discussion**

## I. Factual Allegations

Plaintiff sues the County of Marquette and Marquette County Prosecutors Jenna Nelson and Dakota Fountain. (Compl., ECF No. 1, PageID.2.) He also sues the State of Michigan, the Michigan Department of Corrections (MDOC), MDOC Correctional Facility Warden Erica Huss, and Stephanie Gordon. (*Id*., PageID.1, 9.)

Plaintiff alleges that during March of 2023, he was arrested by the Michigan State Police and charged with stalking MDOC Warden Erica Huss. The charges were ultimately dismissed during October of 2023 when an order of *nolle prosequi* was entered in the Marquette County (96th) District Court. *See* https://micourt.courts.michigan.gov/case-search/ (select Continue, enter "Marquette," select 96th District Court, enter Last Name "Censke," select 2022-221225FY-FY, select Show on the Events tab) (last visited August 26, 2026).

Plaintiff contends that he was falsely arrested and imprisoned and maliciously prosecuted. (Compl., ECF No. 1, PageID.10–11.) He contends that Defendants committed these wrongs in retaliation for Plaintiff's exercise of his First Amendment rights by assisting prisoner Harold Cunningham through the non-profit Legal Advocate 360*[1] and communicating with

[1] Legal Advocate 360* is a domestic nonprofit corporation in good standing with the State of Michigan and Plaintiff is listed as the corporation's registered agent. *See* michigan.gov/lara/ (select Business entity search, search "Legal Advocate," select magnifying glass icon, select Legal Advocate 360*) (last visited Aug. 26, 2026).

Defendant Huss through LinkedIn. (*Id*., PageID.4–5, 10-11, 14, 19–20.) Plaintiff states that he is being discriminated against because of his mental illness and for helping black people. (*Id*., PageID.12.) Plaintiff also mentions that "they" raided Plaintiff's upstairs apartment that was also his Legal Advocate 360* business address and that his apartment was labeled a "DRUG HOUSE" by the 96th District Court.[2] (*Id*., PageID.13, 18–19.) Additionally, Plaintiff alleges that he has been stopped by police multiple times while driving. Plaintiff contends that the stops are also retaliatory and discriminatory.

Plaintiff's complaint also mentions the possibility of eventually raising an accommodation claim under the Rehabilitation Act or the Americans with Disabilities Act. (*Id*., PageID.6 ("Plaintiff reserves the right to amend 7 request and accommodation under the Rehabilitation Act & Americans with Disabilities Act [because I am] suffering from mental health issues which may impede or block memory due to pain") (spelling and grammar errors corrected).) In Plaintiff's typewritten attachment to the form complaint he states:

> America's Disabilities and Rehabilitation Act are violated when targeted [f]or prosecution as a person with MENTAL HEALTH DISABILITIES and history both myself and those Convicts my non profit LEGAL ADVOCATE 360* was Advocating or working with at the time in 2022.

(*Id*., PageID.22.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights. (*Id*., PageID.22.) Plaintiff seeks $2,500,000.00 in compensatory and punitive damages and an injunction "to Cease and Desist Discrimination and Threat." (*Id*., PageID.5.)

---

[2] Plaintiff attaches to his complaint a page from a Michigan Department of State Police incident report. The page suggests that the search was not directed specifically to Plaintiff. The drugs, methamphetamine, that may have resulted in the "drug house" label were found in the bedroom of another person. (ECF No. 1-2, PageID.31.)

## II. Preliminary Injunctive Relief

On January 23, 2026, Plaintiff filed a motion seeking a temporary restraining order (TRO) and preliminary injunctive relief. (ECF No. 21.) That motion was based on an attempt by a pair of armed Michigan State Police troopers to enter Plaintiff's office/workspace without prior notice. (Mot., ECF No. 21, PageID.167.) Plaintiff contends that the troopers' actions were intimidating and retaliatory for Plaintiff's pursuit of this action.

### A. Motions to Supplement

Plaintiff has now twice filed "supplements" to his initial motion. On February 27, 2026, Plaintiff filed a motion asking the Court to permit him to supplement his request with additional facts. (ECF No. 25.) Specifically, Plaintiff wanted to inform the Court that "the State of Michigan and it's prison industrial complex economy acting as a police state, blatantly responds to the TRO motion by printing an **MDOC CONVICT NUMBER 484602** on the envelopes defaming and injuring [Plaintiff] . . . ." (*Id.*, PageID.188.)

On June 1, 2026, Plaintiff filed another motion to admit supplemental evidence in support of his TRO request. (ECF No. 27.) Plaintiff attached a transcript of an online exchange with an operator at a veteran and military chat center and a sworn affidavit from Plaintiff attesting to the accuracy of the transcript. (ECF Nos. 27-1, 27-2.)

The Court will grant Plaintiff's motions to supplement and will consider Plaintiff's supplemental materials when ruling on his motion for preliminary injunctive relief.

### B. Preliminary Injunctive Relief is Not Warranted

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*,

467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162,

167 (6th Cir. 1989). Plaintiff has not made such a showing. As set forth below, Plaintiff has failed to state a claim on which relief may be granted and his complaint is properly dismissed.

Also, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578; *see also Sumner Cnty. Schs.*, 942 F.3d at 326 (holding that, absent a showing of irreparable harm, a preliminary injunction is not appropriate, regardless of the strength of the other factors). Plaintiff's motion sets forth conclusory assertions of wrongdoing related primarily toward individuals who are not currently parties to this action. Moreover, the harm Plaintiff seeks to prevent with his proposed preliminary injunction is the same type of harm he alleges in his complaint. In his complaint, Plaintiff contends that compensatory damages are an appropriate remedy for the harm he alleges. In short, Plaintiff has not set forth specific facts showing an immediate, concrete, and irreparable harm in the absence of an injunction.

For all of these reasons, the Court will deny Plaintiff's motion for a TRO and preliminary injunctive relief.

## III. Failure to State a Claim

Federal Rule of Civil Procedure 8 states that a pleading that states a claim for relief must contain the following:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). The form complaint that Plaintiff filed with the Court provides more detailed guidance:

> State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.

(Compl., ECF No. 1, PageID.4.)

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

When resolving Defendants' dispositive motions, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual

inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Plaintiff's complaint is replete with unsupported inferences, legal argument, and legal conclusions. When whittled down to just the facts, the allegations with regard to Plaintiff's claims accepted as true and construed in a light most favorable to Plaintiff, do not "'nudge' his claim . . . 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

### A. § 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that his First, Fourth, Fifth, and Fourteenth Amendment rights were violated.

#### 1. Claims against the State of Michigan and the MDOC

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See*

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claims against the State of Michigan and the MDOC are also properly dismissed for failure to state a claim on which relief may be granted.

**2. Claims against Prosecutors Nelson and Fountain**

Plaintiff sues each prosecutor in that person's individual and official capacities. Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Although prosecutors may be elected county officials or employed by the county, prosecutors in Michigan are deemed to be state agents when prosecuting state criminal charges.

*Cady v. Arenac Cnty*., 574 F.3d 334, 342–43 (6th Cir. 2009). Therefore, Plaintiff's claims against the Defendant prosecutors in their respective official capacities are actually claims against the State of Michigan.

As explained above, a damage claim against the State of Michigan fails to state a claim on which relief may be granted. *See* § III.A.1. For the same reason that Plaintiff has failed to state a damage claim against the State of Michigan, he has failed to state a damage claim against Prosecutors Nelson and Fountain in their official capacities.

In addition to monetary damages, Plaintiff also seeks injunctive relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id*.

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md*., 535 U.S. 635, 645 (2002)). In *Green v. Mansour*, 474 U.S. 64 (1985), the Supreme Court explained why the doctrine of *Ex parte Young* could not be extended to authorize retrospective relief:

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives

> life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. *See Pennhurst, supra*, 465 U.S. at 102. *See also Milliken v. Bradley*, 433 U.S. 267 (1977). But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

*Id*. at 68. Moreover, past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

Plaintiff does not allege any ongoing prosecutions by the prosecutor defendants and the dockets of the circuit and district courts in Marquette County show all criminal cases against Plaintiff are closed. Therefore, Plaintiff has failed to state an official capacity claim for injunctive relief against Defendants Nelson and Fountain.

Plaintiff's personal capacity claims against the prosecutor defendants fare no better. Prosecutors are entitled to absolute immunity for their actions in pursuit of Plaintiff's criminal prosecution. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Watkins v. Healy*, 986 F.3d 648, 661 (6th Cir. 2021); *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity, in contrast to investigatory or

administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276–78 (1993); *Watkins*, 986 F.3d at 660–61; *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely the prosecutor's conduct is associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). Plaintiff does not suggest that the prosecutors' wrongful conduct occurred outside of their roles as advocates in his criminal prosecutions. Accordingly, the Court concludes that the prosecutor defendants enjoy absolute immunity in their personal capacities and Plaintiff has failed to state a claim against the prosecutors on which relief may be granted.

**3. Claims Against Marquette County**

It appears that Plaintiff has named Marquette County as a defendant because of the connection between the county and the prosecutor's office. But Marquette County may not be held vicariously liable for the actions of county employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county or municipality is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815. "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the county department. *See Monell*, 436 U.S. at 690. Moreover, the

United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty*., 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id*.

Here, Plaintiff has not alleged any facts to support his conclusory statements that an official policy or custom of Marquette County caused him to be prosecuted. Because Plaintiff fails to allege facts showing that a policy or custom was the moving force behind the alleged constitutional injury, he has failed to state a § 1983 claim against Marquette County on which relief may be granted.

**4. Claims Against Stephanie Gordon**

The name "Stephanie Gordon" shows up once in the complaint. It is included in a list of "State of Michigan actors and individuals." (Compl., ECF No. 1, PageID.9.) The complaint does not allege that Defendant Gordon did, or failed to do, anything.

It is a basic pleading requirement that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants

were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Gordon in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). For that reason, Plaintiff has failed to state a claim against Defendant Gordon on which relief may be granted.

**5. Claims Against Erica Huss**

Defendant Erica Huss is not listed in the form complaint submitted by Plaintiff; but she is included in the typewritten attached statement. (Compl., ECF No. 1, PageID.9.) Also included in the attachment are the following allegations:

> Malicious prosecution and false arrest and imprisonment:
>
> Aggravated HABITUAL Stalking charges imprisonment and arrest… violation of speech or media, use for social and business interest with an old friend (Erica Huss Warden MDOC), who testified she wasn't threatened and never told me don't contact her.
>
> * * *
>
> Some very old dear friends blocked me on media.
>
> (It's obvious that Erica Huss has a warden could have also blocked)
>
> * * *
>
> [A]lleged victim and old friend Erica Huss is a Warden inn case #22-221225-FY-FY State v. Censke dismissed 10-02-2023.

* * *

November 1st 2022 Arrested for Stalking an old friend from college NMU Erica Huss, and held on bond impeding liberty and threats of long imprisonment for about 1 yr. I suffer mental issues now.

- At one point Warden Huss testifies that I looked at her LinkedIn media page I have one myself everybody does.
- That's a common activity, but unlike citizens I'm not allowed.
- There's communication between her and State Police Wichinicki, where she tells him oh hit me up on LinkedIn. But I'm not allowed?

(But I guess you know I'm not allowed after all as she says she knew me before I committed my crimes…this really Verge is on a 13th Amendment slavery violation, where slavery's abolish except for convicted felon will I'm not in prison anymore and I don't appreciate being treated like an 19 the century negro.)

* * *

I missed my first deadline ever after the Arrest for Stalking Erica Huss as I was so devastating and lot the future business of my life's work LEGAL ADVOCATE 360*

* * *

(I'd lived at 709 Prince St. Upper Apartment Negaunee MI 49866 or in the Upper Peninsula after, and had LEGAL ADVOCATE 360* activities since 2018 with no such police of prosecutor in my life or business until I started helping this famous black gentleman also with mental health issues in 2022 Harold Cunningham subject of HBO movie ADX about Max Prison Mental Health abuse. (Also notable is that Ward and Erica Huss had just one of those kind of a physicians with the Michigan Department of corrections, and would not only be a benefit but a detriment apparently because she took the opposite stance and wished to harass and wage intimidation via MSP & COUNTY.)

- WHEN I WAS IN THE MDOC IN 2006 Ms. HUSS, WAS THE ASSOCIATE ORDINATE IMAX, THE STATE EQUIVALENT OF FBOP ADX, and MDOC faced many similar lawsuits.
- A juror could infer that defendant Huss as Warden in the MDOC had a vested interest and preventing the exposure of such abuse any activities LEGAL ADVOCATE 360* involving my own experiences and assisting Harold Cunningham. Exhibit A

Nexus or Animus may be evidenced, as no such mass MSP arrest detention interrogation & COUNTY prosecution existed in my life, prior to helping

> HAROLD CUNNINGHAM in 2022, and Erica Huss accusing me of Stalking, with MSP & PROSECUTOR.
>
> (It's notable that judge Kangas asked Erica Haas how long has this been going on she said they purged your records after 10 years…the obvious question is why you doing this now, a jury would rule that is because of my activities with Harold Cunningham and other America's Most wanted.)

(*Id*., PageID.10–11, 14, 15, 19–20, 21, 23–24.)

It appears that Plaintiff is arguing that Defendant Huss complained that Plaintiff was stalking her. Based on the dockets of the Marquette County courts, a stalking complaint was authorized and an arrest warrant was signed on October 27, 2022. *See* https://micourt.courts.michigan.gov/case-search/ (select Continue, enter "Marquette," select 96th District Court, enter Last Name "Censke," select 2022-221225FY-FY, select Show on the Events tab) (last visited August 26, 2026). Plaintiff was arraigned on November 2, 2022. *Id*. The court conducted a preliminary examination on December 12, 2022, and Plaintiff was bound over to the circuit court on the aggravated stalking charge. *Id*.

Plaintiff's case remained pending in the Marquette County Circuit Court for several months. *See* https://micourt.courts.michigan.gov/case-search/ (select Continue, enter "Marquette," select 25th Circuit Court, enter Last Name "Censke," select 2023-0000062205-FH, select Show on the Events tab) (last visited August 26, 2026). Plaintiff moved to quash the bind over. *Id*. After a hearing on July 28, 2023, the court remanded the case to the district court. *Id*.

The case was again scheduled for preliminary examination in the district court. *See* https://micourt.courts.michigan.gov/case-search/ (select Continue, enter "Marquette," select 96th District Court, enter Last Name "Censke," select 2022-221225FY-FY, select Show on the Events tab) (last visited August 26, 2026). Before the scheduled hearing, the court entered an order of *nolle prosequi*. *Id*.

**a. First Amendment Retaliation Claims**

Retaliation based upon a person's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that he engaged in protected conduct when he sent Defendant Huss emails through LinkedIn. He attaches two such emails to his response brief.[3] The first, dated September 7, 2022, states:

> Since I'm already in trouble, umm I apologize but [h]ave to say my dying declaration LOL…I've wanted to know you more or in modern terms collaborate, sin[c]e UC café. May I plz be excused? No joke! …

---

[3] When assessing whether a complaint states a claim, the Court is generally limited to the allegations of the complaint. However, that general limitation is not entirely inflexible. The Sixth Circuit Court of Appeals has "taken a liberal view of what matters fall within the pleadings for purposes of [determining whether a complaint states a claim.]" *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). Thus:

> If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. At this preliminary stage in litigation, courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.

*Id*. (citation omitted); *see also Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). The emails are referenced in the complaint, but the Court has not considered the content of the emails in conducting the preliminary review of Plaintiff's complaint or resolving Defendants' motions to dismiss. The emails are reproduced here to provide context for Plaintiff's somewhat sketchy allegations regarding the emails.

> Plz [praying hands emoji] I'm sorry to use your official. Email but it's public access. However I mean this particular msg more personal but also professional as well [we] have common interests. I'm sure Ms. Huss I can assist you with one way or another..It's a wonderful early autumn day in Negaunee.
>
> Thanx for everything your peeps do.
>
> (Not MDOC only)
>
> Andy [emoji]
>
> PS) hope you and your have a wonderful AUTUMN. I'm sorry ok, that I'm an idiot but man you know we everything, and I'm sorry but am I at fault? Hell a buddy in MX was telling me about the before Times when there where no carel.
>
> Erica I[emoji]U ok?
>
> Plz [emoji]

(ECF No. 18-1, PageID.156.) The second email, dated October 7, 2022, states:

> Ms. Huss Warden,
>
> Pardon me; and allow me to say how nice it is that your career is so fruitful, for both you & our State of Mich! [emoji]
>
> (Ok [emoji] plz)
>
> Enjoy the first snow [emoji] this morning.
>
> Hope your enjoying Autumn in da UP eh? [emoji] The Fall here is addictive haha.
>
> Trick or treat [emoji]
>
> Smell my feet [emoji] lol…No tricks [emoji
>
> Thank you Erica!

(*Id.*, PageID.158.)

Plaintiff offers as alternative protected conduct the assistance he offered to Harold Cunningham and the work he did with Legal Advocate 360*. Plaintiff does not identify how he assisted Harold Cunningham nor does he explain what work he did for Legal Advocate 360*.

Because Plaintiff has not alleged sufficient facts to ascertain whether those activities are protected conduct, Plaintiff's retaliation claim with regard to those activities fails at the first step.

To the extent Plaintiff's emails are protected conduct, Plaintiff has failed to identify any resulting adverse action. Plaintiff suggests that it was adverse action for Defendant Huss to share Plaintiff's emails with the Michigan State Police. Plaintiff does not suggest that Defendant Huss shared false information or that she provided false testimony.[4] Plaintiff might well describe the criminal proceedings that followed as adverse action, but Defendant Huss is not the person who authorized Plaintiff's arrest or prosecution. A truthful report to the police should not be considered an adverse action. *See, e.g., Roney v. Ill. Dep't of Transp*., 474 F.3d 455, 462 (7th Cir. 2007). Accordingly, Plaintiff has failed to state any retaliation claim against Defendant Huss.

**b. Fourth Amendment Malicious Prosecution**

In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit Court of Appeals described the elements of a Fourth Amendment malicious prosecution claim as follows:

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir.2007); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir.2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir.2001); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir.2002). Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, *Fox*, 489 F.3d at 237; *Voyticky*, 412 F.3d at 675. Third, the plaintiff must show that, "as a consequence of a legal

[4] Moreover, Defendant Huss enjoys absolute witness immunity against claims based on her testimony in a prior judicial proceeding. *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) ("It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings."); *accord Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002). "The scope of this immunity is akin to the scope of absolute prosecutorial immunity, which applies to conduct 'intimately associated with the judicial phase of the criminal process.'" *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs*., 640 F.3d 716, 724 (6th Cir. 2011) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

> proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007); *see Gregory v. City of Louisville*, 444 F.3d 725, 748–50 (6th Cir.2006) (discussing the scope of "Fourth Amendment protections ... beyond an initial seizure," including "continued detention without probable cause"); *cf. Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages for confinement imposed pursuant to legal process."). Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Heck*, 512 U.S. at 484 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

*Sykes*, 625 F.3d at 308–09 (footnote omitted).

To prevail on a malicious prosecution claim against Defendant Huss, Plaintiff must show that she "participated in or influenced the decision to criminally prosecute him" which requires showing more than passive cooperation. *Novak v. City of Parma*, 33 F.4th 296, 307 (6th Cir. 2022). "A prosecutor's independent charging decision typically breaks the causal chain for malicious-prosecution purposes." *Id*. The only exception would be if the defendant could "'reasonably foresee that [her] misconduct'—read false statements—would result in an independent decision to prosecute the plaintiff." *Id*.

Plaintiff's malicious prosecution claim against Defendant Huss fails because his allegations do not fall within the exception. He does not contend that Defendant Huss engaged in "misconduct," i.e. false statements. Accordingly, Plaintiff has failed to state a malicious prosecution claim against Defendant Huss.

**c. Fifth Amendment Claim**

Plaintiff makes passing reference to a Fifth Amendment violation. The Fifth Amendment provides, among other things, that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. "[T]he Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay County*,

205 F.3d 867, 873 n.8 (6th Cir. 2000). Plaintiff does not allege that Defendant Huss was functioning as a federal official when she turned over the email(s) to the police or testified in connection with the criminal prosecution. Therefore, her actions could not violate the Fifth Amendment Due Process Clause and Plaintiff has failed to state a Fifth Amendment claim on which relief may be granted.

**d. Fourteenth Amendment Due Process**

The Fourteenth Amendment stipulates, in pertinent part, that "No state shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Plaintiff was deprived of a liberty interest in connection with the stalking prosecution. But he does not allege that the deprivation occurred without adequate process. The dockets of the Marquette County circuit and district courts reveal that Plaintiff was afforded all of the process he was due in connection with that deprivation. Accordingly, Plaintiff has failed to state a Fourteenth Amendment procedural due process claim against Defendant Huss on which relief may be granted.

**e. Fourteenth Amendment Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others

similarly situated." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint contains no facts or allegations to support his equal protection claim. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory, which fails to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

**B. ADA and RA Claims**

As noted above, the entirety of Plaintiff's allegations regarding the ADA and the RA are as follows:

> Plaintiff reserves the right to amend & request an accommodation under the Rehabilitation Act & Americans with Disabilities Act [because I am] suffering from mental health issues which may impede or block memory due to pain.
>
> * * *
>
> America's Disabilities and Rehabilitation Act are violated when targeted [f]or prosecution as a person with MENTAL HEALTH DISABILITIES and history both myself and those Convicts my non profit LEGAL ADVOCATE 360* was Advocating or working with at the time in 2022.

(*Id.*, PageID.6, 22.)

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). To state a claim under the ADA, a plaintiff must show that he is "(1) disabled under the statute, (2) otherwise qualified for participation in the program, [services or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under[,] the program, [services, or activities] by reason of his disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).

Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995)).

Plaintiff's claim appears to be that he was targeted for the stalking prosecution because of his mental health disabilities. Plaintiff's complaint fails to state a claim for violation of the ADA or RA because he does not allege facts plausibly indicating that any Defendant prosecuted him because of his mental health disabilities. Plaintiff's conclusory one-sentence presentation of an ADA/RA violation without specific supporting factual allegations fails to state a claim on which relief may be granted. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

**IV. State Law Claims**

Plaintiff uses language in his complaint that might be interpreted as an effort to allege a state-law tort claim. To the extent that Plaintiff seeks to invoke this Court's supplemental

jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

**Conclusion**

Having conducted the review required under 28 U.S.C. § 1915(e)(2) and considered the Defendants' motions to dismiss, the Court determines that Plaintiff's complaint fails to state any federal claims upon which relief may be granted. Moreover, the Court will dismiss Plaintiff's state law claims because it declines to exercise supplemental jurisdiction over those claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

An order and judgment consistent with this Opinion will be entered.

Dated: September 3, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE